**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ALEXA JEAN M.,

                          Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

No. 5:25-CV-00158
(PJE)

_____

APPEARANCES:

Olinsky Law Group
250 South Clinton Street – Ste. 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration
Office of Program Litigation
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

OF COUNSEL:

HOWARD D. OLINSKY, ESQ.

CANDACE BROWN CASEY, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Alexa Jean M.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of the Social Security Administration ("the

Commissioner" or "defendant") denying his applications for disability insurance benefits.

---

[1] The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C.
§ 636(c), Fed. R. Civ. P. 73, Local Rule 72.2(b), and General Order No. 18.   _See_ Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

*See* Dkt. No. 1 ("Compl."). Plaintiff cross moves for the Commissioner's decision to be vacated and the matter remanded for further administrative proceedings. *See* Dkt. No. 11.[3] The Commissioner cross moves to affirm. *See* Dkt. No. 19. Plaintiff replies. *See* Dkt. No. 20. As the Commissioner's decision is supported by substantial evidence and the proper standards were applied, the Court affirms.

## I. **Background**

On July 8, 2019, plaintiff filed an application for Disability Insurance Benefits, alleging a disability onset date of June 27, 2019, due to depression, anxiety, Post-Traumatic Stress Disorder ("PTSD"), and mixed bipolar disorder. *See* T at 112, 127. The Social Security Administration ("SSA") denied her claim initially on July 21, 2020, and on January 5, 2021, denied it upon reconsideration. *See id.* at 152, 160. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Gretchen Mary Greisler. *See id.* at 24-65. On June 1, 2021, ALJ Greisler issued an unfavorable decision. *See id.* at 11-28. The Appeals Council denied plaintiff's request for review on January 20, 2022. *See id.* at 1. On March 14, 2022, plaintiff commenced an action before this Court. The Court remanded the matter to the Commissioner for further proceedings. *See id.* at 1207-1305. On August 4, 2023, the Appeals Council remanded the case to an ALJ. *See id.* at 1305.

ALJ Greisler held hearings on March 6, 2024, and October 3, 2024. *See* T at 1208-41, 1242-56. On December 5, 2024, ALJ Griesler issued a second unfavorable

---

[3] Citations to the parties' briefs refer to the pagination located at the header of each page, generated by the Court's electronic filing system, not the documents' original pagination. Conversely, "T" followed by a number refers to the pages of the administrative transcript, and the Court cites to the document's original pagination, located in the bottom left corner of each page. *See* Dkt. No. 8.

decision. *See id.* at 1172-98 (Dkt. No. 8-8).[4]  Plaintiff commenced this action on February 4, 2025.  *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the Commissioner's final decision, a district court may not determine de novo whether an individual (the "claimant") is disabled.  *See Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or support the decision with substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted)). This is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotation marks omitted); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh

---

[4]  Plaintiff "bypassed written exceptions, and the Appeals Council did not assume jurisdiction," making the December 5, 2024, the ALJ's decision the final Agency determination.  Dkt. No. 11 at 2.

conflicting evidence in the record) (citing *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate conclusion is arguably supported by substantial evidence.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986).  However, if the ALJ applied the correct legal standards and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

B. **Determination of Disability**

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to disability benefits.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  A disabling impairment is an affliction that is so severe it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  *See id.* § 423(d)(2)(A).  Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3); *see also Ventura v. Barnhart*, No. 04-cv-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background,

4

age, and work experience.") (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

To determine whether the claimant is entitled to disability benefits, a five-step evaluation, based on 20 C.F.R. §§ 404.1520 and 416.920, is used:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")]. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff can engage in

5

gainful employment somewhere.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).

## C.  **Residual Functional Capacity & Persuasiveness**

Residual Functional Capacity ("RFC") is

> what an individual can still do despite his or her limitations . . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . . A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In reaching an RFC determination, an ALJ must consider objective medical facts, diagnoses, medical opinions, and the claimant's subjective symptoms, including pain and other limitations.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a claimant can perform and may not make conclusory statements as to a claimant's capacities.  *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (first quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67. 72 (N.D.N.Y. 2005) then citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016)). The RFC must also include a narrative discussion describing how the evidence supports the ALJ's

conclusions, citing specific medical facts and non-medical evidence.  *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

In evaluating medical opinions, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a) (internal citation omitted).  Instead, medical opinions and PAMFs are evaluated based on their "persuasiveness."  *Id.*  In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors."  *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'"  *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc.*

*Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). For the "consistency" analysis, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. §§ 416.920c(c)(2), 416.1520(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted)). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id.* (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id.* (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM),

2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, at *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.").

### III. **ALJ's Decision**[5]

ALJ Greisler first observed that plaintiff met the insured status requirements through December 31, 2027.  *See* T at 1175.  She next determined that plaintiff engaged in substantial gainful activity from September 2, 2021, through March 24, 2023, but that there "has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity."  *Id.* at 1175-76.   The ALJ also considered plaintiff's "post-onset work during 2019," from September 5, 2019, to November 1, 2019, concluding that, although this work "exceeded substantial gainful activity levels for this period of time . . . , this work by the claimant constitutes an unsuccessful work attempt (20 CFR 404.1574)."  *Id.* at 1176.  At step two, she determined that plaintiff had the following severe impairments: bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and an eating disorder.  *Id.* at 1176.

---

[5]   The Administrative Transcript was filed in a manner in which it was broken into many parts. The ALJ's decision and hearing transcript can be found at docket number 8-8.

At step three, the ALJ determined that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" T at 1177. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to:

> Perform a full range of work at all exertional levels, but with the following non-exertional limitations: she can perform simple work at a consistent, goal-oriented pace, but not at a fast, production-rate pace, such as would be experienced in assembly line type of work; she cannot interact with the public or work around crowds of people; and she can make simple decisions and tolerate work changes.

*Id.* at 1181. At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. *See id.* at 1196. At step five, the ALJ determined that plaintiff could perform the following jobs existing in significant numbers in the national economy: dishwasher (DOT # 318.687-010), janitor (DOT # 381.687-018), and laundry laborer (DOT # 361.018). *See id.* at 1196-97. Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act" from the alleged onset date, "June 27, 2019, through the date of this decision." *Id.* at 1197-98.

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ "failed to support with substantial evidence her analysis of Plaintiff's work as a teacher aide, and this flawed analysis negatively impacted the remainder of the ALJ's decision." Dkt. No. 11 at 9. Plaintiff continues this argument by contending that the ALJ improperly rejected consistent opinions from Letteita[6] McNally, PMNHP; Cheri Wakeham, LCSW; Sonya Sariego, PMHNP; and

---

[6] The ALJ spells this provider's name as Letita; however, records confirm the name is Letteita. *Compare* T at 1191 *with* T at 406.

Abigail Colin, PA, who concluded that plaintiff would be absent from work more than two days per month, relying instead on the opinions of consultative examiner Jeanne Shapiro, Ph.D. and state agency mental health consultants O. Fassler, PhD. and H. Ferrin, Ph.D., who found no limitations. *See id.* at 11. Plaintiff contends that the ALJ's rejection of the treating providers conclusions while finding that plaintiff "had severe mental impairments warranting restriction to simple work without fast, production-rate pace, with only occasional interaction with supervisors and co-workers, without interaction with the public, and with only occasional work changes" is a "peculiar use of contradictory information" that "is best explained by the ALJ's interpretation of Plaintiff's work as a teacher's aide." *Id.*

Plaintiff further concludes that the ALJ erred in concluding that plaintiff's work as a teacher's aide was not accommodated "or anything other than substantial gainful activity" due to a lack of a "formal memorandum stating plainly that Plaintiff was to have accommodations or on records demonstrating an informal accommodation." T at 11-12. Plaintiff contends that the ALJ, therefore, "non-explicitly denies Plaintiff's consistent history of being absent from work, despite the plain-as-day documentation of plaintiff missing work[.]" *Id.* at 12. Plaintiff accuses the ALJ of "screening of evidence in a selective manner," contending that she ignores a variety of records showing a number of absences and documents reflecting "concern" or "warning" with respect to the absences and the absence of any "threats of termination or other punitive measures". *Id.* Lastly, plaintiff appears to contend that the RFC is unsupported by substantial evidence because the failure to incorporate any limitation as to absences contradicts with plaintiff's "plainly-documented absences." *Id.* at 13.

11

The Commissioner contends that the decision is supported by substantial evidence. *See generally* Dkt. No. 19. He argues that plaintiff "attempts to conflate" the ALJ's step one finding of substantial gainful activity with his RFC finding that applied when plaintiff was not performing substantial gainful activity. *Id.* at 3. The Commissioner contends, "the mere fact that Plaintiff was absent from work is not enough to show that the work was done under special conditions—and Plaintiff has not pointed to any evidence that would require a reasonable factfinder to conclude that she was performing her work under special conditions." *Id.* at 7. The Commissioner further argues that plaintiff's counsel raised this argument at the hearing, which the ALJ considered and rejected. *See id.* at 7-8 (citing T at 1175, 1176). The Commissioner asserts that her employer did not provide special conditions, some of plaintiff's absences were not documented as taken for her medical needs, and, despite her absences, her employer positively recommended her to be placed in permanent status. *See id.* at 9. Next, the ALJ argues that the RFC is supported by substantial evidence as the ALJ properly assessed and sufficiently discussed the supportability of the various medical opinions. *See id.* at 11-26. Lastly, the Commissioner argues that plaintiff has not met her burden of proving a more restrictive RFC, and her arguments amount to a disagreement with the weighing of the evidence. *See id.* at 19 at 24-25.

In reply, plaintiff contends that "[t]he absence of consequences for absences is an accommodation[.]" Dkt. No. 20 at 1.

## B. **Analysis**

### 1. **Substantial Gainful Activity**

As the Eastern District of New York has set forth:

The Social Security Administration ("SSA") states that "[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity. We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings . . . . Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity." 20 C.F.R. § 404.1574(a)(1). Similarly, as recently summarized by a court in this District, "[i]n determining whether work constitutes substantial gainful activity, the primary consideration is the claimant's earnings. Earnings in excess of agency-established thresholds create the presumption that the claimant is engaged in substantial gainful activity." *Croce v. Acting Comm'r of Soc. Sec.*, No. 17-CV-0440, 2018 WL 4636815, at *5 (E.D.N.Y. Sept. 27, 2018) (citing 20 C.F.R. § 404.1574(a)(1)).

Although earnings are the primary consideration, if a Plaintiff's "work is done under special conditions, [the SSA] may find that it does not show that [the Plaintiff has] the ability to do substantial gainful activity" even if that Plaintiff meets the earning threshold. 20 C.F.R. 404.1573(c).[7] However, the "plaintiff bears the burden of establishing that despite surpassing the established levels of earnings, [he] was not engaged in substantial gainful activity." *Croce*, 2018 WL 4636815 at *5. Thus, a plaintiff alleging special conditions must adequately demonstrate them at the hearing to rebut the earnings presumption.

[. . . .]

Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
(1) You required and received special assistance from other employees in performing your work;
(2) You were allowed to work irregular hours or take frequent rest periods;
(3) You were provided with special equipment or were assigned work especially suited to your impairment;

---

[7] *Dyer v. Colvin*, No. 13-CV-6312P, 2015 WL 1458511, at *13 (W.D.N.Y. Mar. 30, 2015):

In such circumstances, "[t]he mere existence of earnings over the statutory minimum is not dispositive," *Carlson v. Colvin*, 2014 WL 1155617, *2 (E.D.Cal. 2014) (quoting *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir.1990)), because a person may not be performing work at the substantial gainful activity level, despite having earnings that exceed the minimum set forth in the regulations. *Id.*; see *Caiozzo v. Astrue*, 2012 WL 2921187, *3 (E.D.N.Y.2012) ("[a]n ALJ may also find that a claimant is disabled notwithstanding [her] monthly earnings where the work is performed under special conditions").

(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;

(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

Campbell v. Berryhill, No. 18-CV-3872(JS), 2019 WL 2436597, at *2-3 (E.D.N.Y. June 10, 2019), aff'd sub nom. Campbell v. Saul, 805 F. App'x 23 (2d Cir. 2020)).

As a threshold matter, plaintiff does not contest that the earnings during her post-onset employment as a teacher's aide with BOCES from September 2, 2021, to March 24, 2023, were above the earning level required for substantial gainful activity. See generally dkt. no. 11.

The Court rejects plaintiff's arguments insofar as she is contending that the ALJ did not consider plaintiff's absences or assess whether plaintiff engaged in her work with "special conditions" or "ignored" documentation of absences. Dkt. No. 11 at 11-13; Cf. Croce, 2018 WL 4636815, at *6 (remanding where "[t]he ALJ did not address in her decision any . . . evidence that may suggest that [the plaintiff]'s work was performed under special conditions[,]" and directed on remand for ALJ to consider the plaintiff's testimony of accommodations and determine if they are special conditions such that work is substantial gainful activity) ; Rogers v. Colvin, No. 15CIV3921 CSPED, 2016 WL 4626572, at *16 (S.D.N.Y. Sept. 6, 2016) (concluding the ALJ's substantial gainful activity determination was supported by substantial evidence where "the ALJ . . . gave a thorough explanation of his decision not to consider plaintiff's work as having been done under special conditions," "noted that though plaintiff 'claimed that his employer (his

14

cousin) accommodated him and made allowances for his 'slowness,' such accommodation was not documented in the record.").

At the hearing, plaintiff's counsel argued that plaintiff's employment as a teacher's aide from September 2021 through March 2023 was "a trial work period with an extended period of eligibility," contending that plaintiff "was receiving significant accommodations" such as having "someone cover her while she would go to the bathrooms to haver (sic) her panic attacks, as well as being able to leave and have a different teacher's aide take over for her, and that this was happening multiple times per week." *Id.* at 1212-13. Thus, counsel argued that the job "wasn't competitive employment," noting that he "can't argue that without evidence of course. So that's why I'm trying to get those, just so Your Honor is aware." *Id.* at 1213.

Plaintiff testified that her employer "was very good to me." T at 1219. She testified that she "tried quitting" in October 2019 but her boss told her, "whatever they had to do to keep me, they will put my health first, my mental health if I need to take breaks and stuff like that." *Id.* at 1219, 1222. "Everybody was really good to me. . . . I was not doing the work I should have been doing. Because I was just very anxious all the time." *Id.* at 1222. Plaintiff further testified that she would leave the room due to panic attacks once or twice per day and would leave for fifteen-to-twenty-minute periods. *See id.* She testified that, due to panic attacks, she would leave work for the day, a couple of times per week, but near the end of her employment period, she would leave for the day due to panic attacks "almost every day." *Id.* at 1223.

In her decision, the ALJ explicitly noted the following:

There is nothing in the evidence of record to indicate that the claimant performed her work between September 2, 2021 and March 24, 2023 under

any special conditions that took into account her impairment and permitted her to work.  There is also no evidence that she received any assistance from others in performing her job duties, required any special working conditions, was lower in productivity than others performing the same job, or was unable to understand the nature of her duties for which she received the income.

T at 1175.  The ALJ indicated that she

has considered the argument made by the claimant's counsel that the number of days the claimant missed from work during this period of time establishes that the claimant was receiving significant accommodations at work (Hearing Testimony).  Nevertheless, there is nothing of record to indicate that any informal arrangement the claimant reportedly had regarding her job duties during this period of time constituted a formal accommodation by her employer, nor is there any evidence from her employer that the claimant received any special assistance on the job that was not given to other employees (Exhibit 36E).

*Id.* at 1175-76.

Although plaintiff presented evidence of frequent absences – either full or part day – the ALJ did not "ignore[] the documentation of persistence evidence issues and the lack of consequences therefrom"; rather, she explicitly discussed (1) counsel's argument that the absences and failure to fire her based on absences amounted to a special condition and rejected that argument; and (2) plaintiff's testimony about experiencing panic attacks associated with having to interact socially, leaving the room once or twice per day, leaving work early, and her feelings that having to work would be an "overload" and cause increased and overwhelming anxiety.  *See* T at 1175-76, 1187-88.  As the Commissioner points out, the number of absences that counsel cited at the hearing in support of his argument that plaintiff worked in her teacher's aide job under special circumstances

included absences that occurred prior to the June 27, 2019[,] alleged onset date; absences that occurred during Plaintiff's unsuccessful work attempt from September 5, 2019, through November 1, 2019 – a period that the ALJ

16

agreed was not SGA[]; and absences that were not clearly related to Plaintiff's allegedly debilitating impairments, as they were coded as "Family Illness," "Snow Days," and NYS Paid Covid."

Dkt. No. 19 at 8 (citing T. at 1176, 1784-85). Additionally, as the Commissioner highlights in his cross-motion, although there were periods where plaintiff took leave without pay, she did not use up all of her allotted leave in December 2021. Dkt. No. 19 at 8 (citing T at 1768).

More specifically, the ALJ also considered plaintiff's medical records with respect to her work as a teacher's aide and her mental health, referring to an October 30, 2019, record where plaintiff reported to her mental health provider that she experienced "a full-blown anxiety attack at work, the claimant had left work and had not returned; that she slept for two days; and that she was feeling better, but needed some time off." T at 1182. The ALJ also discussed another medical record documenting plaintiff's report to her mental health provider that on January 15, 2020, she "experienced a major panic attack at work; and that her boss suggested the claimant should take some time off," and plaintiff requested an out-of-work note.[8] *See id*. at 1182.

As noted, the ALJ considered and explicitly discussed the arguments plaintiff now raises with respect to her allegations of working under special conditions. *Cf. Reynard v. Colvin*, 220 F. Supp. 3d 529, 540 (D. Vt. 2016)[9] (finding, where ALJ relied on a medical provider's statement that the plaintiff could consistently make his appointments in concluding the plaintiff did not have marked restrictions in his ADL, "the ALJ ignored many other reports stating that the plaintiff had failed to keep

---

[8] The ALJ explained, as to Nurse Practitioner McNally's opinion that plaintiff was unable to work from January 14, 2020, to January 28, 2020, "there is no indication that the restrictions placed on the claimant by this opinion as intended to be anything other than temporary and short-term in duration." T at 1195.
[9] *See* Dkt. No. 11 at 12-13 (citing *Reynard*, 220 F. Supp. 3d at 540).

appointments, screening the evidence in a selective manner to make a point that was unsupported by the record as a whole and inconsistent with Ms. Lewis' own clinical findings."). Plaintiff has not established that any of the six considerations set forth in 20 CFR § 404.1573(c) demonstrate that special conditions apply. First and notably, in plaintiff's work activity report, dated June 27, 2019, in response to the question asking whether she performed her work as a teacher's aide under any special conditions, such as working irregular or fewer hours, taking more rest periods than other workers, having fewer or easier duties than others, or being permitted to produce less work than others, plaintiff checked a box indicating "[n]one of the above apply."[10]  T at 311; *see generally Anthony G. v. Comm'r of Soc. Sec.*, No. 24 CIV. 3852 (GWG), 2025 WL 1937314, at *8 (S.D.N.Y. July 15, 2025) (in affirming the ALJ's finding that the plaintiff's work was substantial gainful activity, Court relied, in part, on the plaintiff's work activity report where he reported that none of the special conditions applied to his work). In response to the question in the work activity report asking whether she made any changes "since the date shown in the identification section," such as stopping working, reducing her hours, changing to lighter work, she indicated, "no." T at 312.

Second, although plaintiff's counsel stated during the hearing that plaintiff "indicated to me" that she was "able to have someone cover for her when she would go to the bathroom to haver (sic) her panic attacks," once or twice per day, as well as "being able to leave and have a different teacher's aide take over for her," she presented no evidence to support her testimony that other employees assisted her in performing her work. *See* T at 1212-13, 1222; *see also* 20 C.F.R. § 404.1573(c)(1).

---

[10] Although not determinative, in an August 11, 2021, application for the teacher's aide position, plaintiff indicated that she did not require accommodations due to a disability. *See* T at 1169.

She further did not testify, nor provide any evidence to support a finding, that any of the other "special circumstances" factors applied: that she worked in a "sheltered environment," required special equipment to perform her duties, that other people helped her get to and from work, or that her work was less than that of other employees. *See id.* §§ 404.1573(c)(4), (c)(4), (c)(5).

Similarly, despite plaintiff's testimony that she "was not doing the work [she] should have been doing" and that her boss told her they would do "whatever they had to do" to convince her not to quit, the Court agrees that beyond plaintiff's testimony, there is no support that her work fell below expected levels and that her employer accommodated it. T at 1222. There is no evidence to support her testimony that, on a daily basis, she was afforded one or two fifteen-to-twenty-minute unscheduled breaks – in addition to allotted breaks – for panic attacks or that she was paid for work she did not perform. *See Figueroa-Plumey v. Astrue*, 764 F. Supp. 2d 646, 652 (S.D.N.Y. 2011) ("[A]lthough Figueroa testified that she would 'lay down on the chair and relax' at times [], her testimony did not establish that those breaks were rest periods designed to accommodate her impairment. Rather, she explained that she took breaks between patients.") (internal citations omitted). There is no evidence that she was leaving early "almost every day" toward the end of her employment due to her mental health impairments. *See* T at 1884-85[11]; *Cf. Carbee v. Comm'r of Soc. Sec.*, 1:17-CV-0051 (GTS), 2018 WL 33516, at *8 (finding the ALJ's step-one finding unsupported by

---

[11] Plaintiff's last day of employment was March 24, 2023. In the two months before her resignation, plaintiff appears to have worked less than a full day twice and took off twice. *See* T at 1785. Plaintiff's records show that plaintiff appears to have (1) left early (0.5 of a day) on February 2, 2023; (2) took off on February 16, 2023; (3) took off on March 9, 2023; and (4) appears to have left early on March 24, 2023 (0.03 of a day). *See id.*

substantial evidence where the plaintiff testified that he was given job assignments suited to his impairment, submitted a third-party statement from his former supervisor that substantiated the plaintiff's testimony that he had difficulty performing his job duties without the assistance of other employees, that the plaintiff's performance was considered unsatisfactory, and he was given choice to resign or be fired); *see Johnson v. Comm'r of Soc. Sec.*, No. 15-CV-0341 (SLT), 2017 WL 1166348, at *3 (E.D.N.Y. Mar. 28, 2017) ("Beyond Plaintiff's testimony that he missed work to receive medical care and had difficulties walking stairs, the record provides no evidence with which he could meet his burden to show that he worked under 'special conditions' not qualifying as substantial gainful activity."); *Byrd v. Astrue*, No. 12-CV-2211 JS, 2013 WL 4459040, at *11 (E.D.N.Y. Aug. 16, 2013) (finding no indication that the plaintiff's testimony of change in performance job duties due to impairments resulted in actual change to her job duties or performance of her job duties in unsatisfactory manner; thus, the plaintiff did not demonstrate special conditions).

In addition, there is no evidence that her employer considered her performance unsatisfactory. *See generally Lenczewski, ex rel. Lenczewski v. Astrue*, No. 08-CV-0862-A, 2010 WL 2472548, at *6 (W.D.N.Y. June 15, 2010). Although an evaluation from January 2022 reflected that plaintiff's "attendance and punctuality" as of December 2021 were marked as a two out of four, reflecting a "developing" skill and indicated that plaintiff had not followed "absentee protocols" on two occasions and had instances of leaving early or arriving late, the employer also noted that plaintiff still had leave time remaining, that her attendance and report times improved after a meeting. T at 1768. The December 2021 report also reflected her employer's clear "expectation" that plaintiff

follow the employer's "absentee protocols" going forward or face "additional consequences."  *Id.* at 1768, 1635.  The employer otherwise gave plaintiff the highest possible score – highly effective – in every other area of review.  *See id.* at 1468-69.  Other records show that plaintiff was recommended to continue as a permanent employee following her probationary period.  *See id.* at 1625.  Nothing in this record or the other records the plaintiff submits suggests that the employer was providing accommodations for the plaintiff or that she was failing to do her job because of her impairments.  *See id.* at 1468-69.  Plaintiff suggests that the lack of "consequences" from her frequent absences supports a finding that plaintiff worked under special circumstances; however, the record reflects that the employer made its expectations clear to plaintiff, plaintiff improved, and when absences became an issue again, she was again advised of the expectations.  *See id.* at 1635.

In addition, the Court does not find that the VE's testimony lends any meaningful support to plaintiff's argument.[12]  *See* T at 1234.  During the hearing, plaintiff's counsel inquired of VE whether, based on her experience, she believed plaintiff received an accommodation, and VE responded, "based on her testimony, it sounded like she received accommodations, yes."  *Id.*  Counsel then asked, "with that accommodation, if an individual was regularly having that accommodation/these problems at a job, do you believe that they wouldn't be able to maintain it long term?"  There VE did not give a clear answer during this colloquy, but at some point thereafter, the VE testified, "[c]ircumstances that are not provided for all would be problematic in the competitive labor market."  *Id.* at 1236.  However, as the Court observes that plaintiff did not support

---

[12]  Plaintiff also did not discuss this testimony in her cross-motion, perhaps as she agreed.  *See* Dkt. No. 11.

her testimony with evidence of a special accommodation(s), this testimony does not alter its finding.

"Here, the ALJ performed sufficient analysis of the conflicting evidence regarding the existence of special circumstances at plaintiff's previous position and reasonably declined to find that plaintiff's work was done under special conditions." *Rogers v. Colvin*, No. 15CIV3921CSPED, 2016 WL 4626572, at *16 (S.D.N.Y. Sept. 6, 2016). Further, after concluding that the teacher's aide job was substantial gainful activity, the ALJ did not stop at step one and continued with his analysis, concluding that (1) there existed a continuous twelve-month period during which plaintiff did not engage in substantial gainful activity, and (2) plaintiff could not perform her past work as a teacher's aide. *See* T at 1176, 1196; Dkt. No. 19 at 3.

Accordingly, the Court concludes that the ALJ's step-one finding is supported by substantial evidence, and the ALJ did not err in concluding that plaintiff failed to demonstrate that she performed her teacher's aide job under special conditions.

> "When 'there is substantial evidence to support either position, the determination is one to be made by the fact-finder.' *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do."

*Louise F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1905-DB, 2022 WL 17176900, at *16 (W.D.N.Y. Nov. 23, 2022). As the ALJ's step one finding is supported by substantial evidence, there is no basis for remand on this ground.

### 2. **Evaluation of Opinion Evidence**

Plaintiff appears to argue, through her citations to SSR-96-8p and 20 C.F.R. §§ 404.1520(c)(c), 416.920c(c), that the ALJ committed an error in her analysis of the

22

persuasiveness of certain medical opinions.  *See* Dkt. No. 11 at 10.  She explicitly contends that the ALJ's finding that plaintiff did not perform her work as a teacher's aide with special conditions tainted the remainder of her decision.  *See id.* at 11.  Plaintiff appears to argue that the ALJ erred in (1) finding unpersuasive those portions of the "concurring opinions" from Lettitia McNally, Cheri Wakeham, Abigail Conlin, and Sonya Sariego which found that plaintiff would be absent at least two days of work per month and off task for ten-to-twenty percent of the workday; (2) finding persuasive the opinions of Drs. Shapiro, Ferrin, and Fassler finding that plaintiff had no restrictions; and (3) finding that plaintiff had "severe mental impairments warranting restriction to simple work without fast, production-rate pace, with only occasional interaction with supervisors and co-workers, without interaction with the public, and with only occasional work changes."  Dkt. No. 11 at 11.  She argues that this is a "peculiar use of contradictory information."  *Id.*

The Court finds that the ALJ's persuasiveness analysis is supported by substantial evidence.  As relevant here, the ALJ reviewed (1) three opinions from plaintiff's mental health provider Letteita McNally, PMHNP, from March 5, 2020, October 1, 2020, and January 15, 2020, T at 1191, 1192, 1195; (2) an April 2021 opinion of mental health providers Cheri Wakeman, LCSE and Colleen Curr, NP; (3) a December 2023 opinion of orthopedic providers Abigail Conlin, PA and Dr. Christopher Wang, DO; and (4) a February 9, 2024, opinion of mental health providers Sonya Sariego, PMHNP and Michael Pratts, MD.[13]  She also reviewed opinions from State Agency review

---

[13] Dr. Pratts cosigned NP Sariego's opinion.  The ALJ noted that it did not appear that Dr. Pratts ever personally treated plaintiff. *See* T at 1195 (citing Exh. 32F, 36F, 41F).

23

psychologists Dr. Ferrin and Dr. Fassler and consultative examiner Dr. Shapiro.  *See* T at 1190-95.

The ALJ found NP McNally's March 5, 2020, opinion to have "some persuasive value[,]" finding it "generally supported by her treatment notes" but concluded that the opinion – finding she had no limitations on her social interaction and adaptation – was "not entirely consistent with the other evidence of record, which shows the claimant to have greater limitations in her social interaction and adaptation than those to which Nurse Practitioner McNally had opined on March 5, 2020[.]"  T at 1191-92.   She found NP McNally's October 1, 2020, opinion to be "less persuasive,"  *Id.* at 1192.  The ALJ declined to adopt the portion of NP McNally's opinion finding that plaintiff's "mental abilities and aptitude needed to do particular types of jobs" were seriously limited, but not precluded, in five out of twenty-one areas; that the claimant had repeated episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw from the situation or experience exacerbation of signs and symptoms; had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and that plaintiff would be off task more than twenty-percent of an eight-hour work day and absent for about four work days per month.  T at 1192.  The ALJ concluded that this finding "is not supported by her treatment notes for the claimant, which show improvement in the claimant's mental functioning since Nurse Practitioner McNally rendered her previous opinion on March 5, 2020 (Exhibit 25F)."  *Id.* at 1192-93.  The ALJ further observed that nothing in the record suggested that McNally "ever performed any formal testing of the claimant's attention and concentration" to support her concentration, persistence, pace, or off-task or absenteeism conclusions.  *See id.*

24

The ALJ further observed that McNally's opinions on time off-task and attention and concentration were inconsistent with the actual formal testing of the claimant's attention and concentration that was performed by Dr. Shapiro[.]" *Id.* at 1193. The ALJ determined that NP McNally's opinion on absenteeism is "purely speculative and not supported by any documented observation or evaluation" and "internally inconsistent" with her "good" prognosis for plaintiff. *Id.* at 1193. Lastly, the ALJ noted that "the disabling portion of Nurse Practitioner McNally's October 1, 2020 opinion is also inconsistent with the assessments of the claimant by Dr. Ferrin, Dr. Fassler, and Dr. Shapiro." *Id.* at 1193.

The ALJ next found NP McNally's January 15, 2020, opinion that plaintiff was "unable to work from January 14, 2020[,] to January 28, 2020[,]" to be "unpersuasive." T at 1195. The ALJ noted that there was "no indication that the restrictions placed on the claimant by this opinion was intended to be anything other than temporary and short-term in duration." *Id.* The ALJ further concluded that this opinion "is neither supported by, nor consistent with, the evidence of the record for the entire period being adjudicated." *Id*.

The ALJ rejected as unpersuasive the December 19, 2023, opinion of Physician Assistant Abagail Conlin, and Christopher Wang, D.O., treating orthopedic providers. *See* T at 1190. As relevant here, the ALJ found that their opinion that plaintiff would need to take two unscheduled breaks during an eight-hour work day, would be off task for ten percent of an eight-hour work day, and absent from work four work days per month was "unsupported by any documented observation or evaluation by either Physician's Assistant Conlin or Dr. Wang, and thus wholly conjectural." *Id.* at 1190-91.

25

Further, the ALJ determined that this opinion is "internally inconsistent with their conclusion that the claimant's progress is good." *Id.*

The ALJ reviewed the April 30, 2021, opinion from Cheri Wakeham, LCSE and Colleen Curr, NP, similarly finding it to be "less persuasive." T at 1193. As relevant here, Wakeman and Curr concluded that plaintiff was unable to meet competitive standards in two out of twenty-one areas, that plaintiff had experienced episodes of deterioration or decompensation in work or work-like settings, that plaintiff had deficiencies of concentration, persistence, or pace leading to inability to complete tasks in a timely manner, that plaintiff would be off task for twenty percent of an eight-hour work day and absent more than four days of work per month  See id. The ALJ found that this portion of the opinion was "inconsistent with the opinions of Dr. Ferrin, Dr. Fassler, and Dr. Shapiro. *Id.* at 1194.  The ALJ further concluded that, "[f]urther detracting from the supportability of this portion of the opinion is their acknowledgment on April 30, 2021 that they had not treated the claimant since June of 2020." *Id.* Further, as with NP McNally, the ALJ observed that there was nothing to suggest that Wakeham or Curr performed any formal testing to support their findings relating to matters of concentration, persistence, or pace, time off task or absenteeism. *Id.*  The ALJ noted that their findings on these grounds were inconsistent with that of Dr. Shapiro, and that their findings as to time off task and absenteeism is "wholly conjectural and not supported by any documented observation or evaluation."  *Id.*

The ALJ next set forth a detailed review of the February 9, 2024, opinion of Sonya Sariego, NP, which was cosigned by Michael Pratts, MD, finding it to be "less persuasive." T at 1194.   The ALJ observed that they concluded that plaintiff's "mental

26

abilities and aptitude needed to do particular types of jobs were either unlimited, very good, or limited but satisfactory in 20 out of 21 areas; that the claimant's mental abilities and aptitude needed to do particular types of jobs were seriously limited, but not precluded in one out of 21 areas"; plaintiff did not have low IQ or reduced intellectual functioning; plaintiff did not have any deficiencies in concentration, persistence, or pace; and that plaintiff would be off task ten percent of an eight-hour work day and absent two work days per month.  *See id.*  As relevant here, the ALJ declined to adopt those portions of NP Sariego and Dr. Pratts' opinion as to time off task and absenteeism, noting that such findings are inconsistent with the opinions of Dr. Ferrin, Dr. Fassler, and Dr. Shapiro and inconsistent with their own opinion that plaintiff's "mental abilities and aptitude needed to do particular jobs was unlimited, very good, or limited but satisfactory in 20 out of 21 areas."  *Id.* at 1195.  The ALJ further noted that the record lacked any indication that NP Sariego or Dr. Pratts performed any formal testing to support their findings regarding concentration, persistence, pace, time off-task, or absenteeism.  *See id.*  Further, the ALJ observed that records supported, other than noting distractibility at two appointments in August and September 2022, "all other mental status exams of the claimant by Nurse Practitioner Sariego have shown the claimant to have good attention and concentration."  *Id.*  The ALJ concluded that NP Sariego and Dr. Pratts' finding that plaintiff would miss two days of work per month to be "purely speculative and not supported by any documentation or evaluation."  *Id.*

The ALJ next detailed the opinions of State Agency review psychologists Dr. Ferrin and Dr. Fassler, and consultative examiner Jeanne Shapiro, PhD.  *See* T at 1191.  As the ALJ observed, nonexamining State agency review consultants Dr. Ferrin

27

reviewed plaintiff's records in June 2020, and Dr. Fassler reviewed plaintiff's records in January 2021. *See id.* at 112-126. Dr. Ferrin concluded that plaintiff had "some difficulty with adaptation but is able to cope with workplace changes and make plans"; is able to understand and remember complex instructions and procedures; is moderately limited in her ability to complete a workday or workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 122. Dr. Ferrin concluded that plaintiff was unlimited in her ability to maintain attention and concentration for extended periods and to be punctual within customary tolerances. *Id.*

Dr. Fassler concluded that plaintiff had sustained concentration and persistence limitations but had no limitation in the ability to carry out very short, simple instructions; was not significantly limited in her ability to carry out detailed instructions; not significantly limited in her ability to maintain attention and concentration for extended periods; moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; not significantly limited in her abilities to respond appropriately to changes in the work setting and interact appropriately with the general public. *See* T at 144-45.

The ALJ concluded that Drs. Ferrin and Fassler's opinions were "supported by their program knowledge and expertise, their review of the available evidence of record, and the detailed explanations they furnished for their opinions." T at 1991.

On May 29, 2020, Dr. Shapiro determined that plaintiff had no limitations on any of her work-related mental abilities. *See* T at 784-89. The ALJ determined that her

28

opinion was "supported by the unremarkable findings she made during her direct examination of the claimant, by Dr. Shapiro's familiarity with the policies and evidentiary requirements of the SSA's disability program, and by the fact that the purpose of Dr. Shapiro's examination of the claimant was to render a medical opinion on disability." *Id.* at 1191. In reviewing Dr. Shapiro, Dr. Fassler, and Dr. Ferrin's opinions, the ALJ "acknowledged" that (1) Dr. Shapiro's opinion is not "entirely consistent" with Dr. Fassler and Dr. Ferrin's, and (2) Dr. Shapiro, Dr. Fassler, and Dr. Ferrin's opinions "are also not entirely consistent with the evidence received at the hearing level, which supports placing some additional limitations on the claimant's mental ability to perform work-related activities." *Id.* at 1191. Thus, the ALJ added additional restrictions: simple work, goal-oriented work, not at a production pace; occasional interaction with supervisors and coworkers; no interaction with the public or crowds of people; and simple decisions and occasional work changes. *Id.*

Plaintiff appears to contend that the ALJ erred in her assessment of these opinions because McNally, Wakeham, Colin, and Sariego all were consistent in their determination that plaintiff would have frequent absences and time off task. *See* Dkt. No. 11 at 11. Here, however, as reviewed above, the ALJ provided, in great detail – one of the most in-depth persuasiveness analyses this Court has seen – her reasons for according these opinions less weight than that accorded to Drs. Shapiro, Ferrin, and Fassler.

Although McNally, Conlin, Wakeham, and Sariego's opinions were consistent with each other as to their findings that plaintiff would experience frequent absenteeism and time off-task, the ALJ reasonably concluded that those findings were unsupported.

29

As the ALJ stated, there was no evidence that these providers tested plaintiff's attention, concentration, or pace.  She further recognized that their opinions on these grounds were inconsistent with the opinions of Drs. Shapiro, Ferrin, and Fassler.

Insofar as plaintiff argues that the ALJ's rejection of McNally, Conlin, Wakeham, and Sariego's opinions as to absenteeism and time off task is "contradictory" insofar as the RFC recognized and accounted for mental health opinions, yet Dr. Shapiro, Ferrin, and Fassler found no limitations to plaintiff's mental abilities, the Court disagrees.  Dkt. No. 11 at 11.  In finding those portions of McNally, Conlin, Wakeham, and Sariego's opinions relating to time off task and absenteeism to be less persuasive, as noted above, the ALJ explained her reasoning in great detail.  Her reasons for rejecting those portions of the opinions that assigned work-preclusive limitations relating to attendance and being off task are plainly articulated and supported by substantial evidence – they are unsupported by the providers' treatment notes, including largely normal mental status exams showing good attention and concentration; not supported by formal testing or observation;  in contradiction with formal testing in the record; not based on recent treatment or based on limited treatment unrelated to plaintiff's mental health; or not reflective of their own evaluations or examinations.  *See* T at 1190, 1193, 1194, 1195.  It was within the ALJ's purview to decline to adopt those portions of the treating providers' opinions, relying instead on those medical opinions that performed testing on concentration, persistence, and pace for considerations of time off task and attendance. "The existence or lack of formal testing is a valid consideration when determining whether a provider's opinion is properly supported."  *Juliana Jolean A. v. Kijakazi*, No. 5:20-CV-1268 (BKS), 2022 WL 595361, at *11 (N.D.N.Y. Feb. 28, 2022) (affirming

rejection of provider's opinion regarding time off task where there was no evidence provider performed any testing of the plaintiff's attention or concentration) (first citing *Samantha B. v. Kijakazi*, No. 20-cv-590, 2021 WL 4288442, at *12 (N.D.N.Y. Sept. 21, 2021) then citing *Renalda R. v. Comm'r of Soc. Sec.*, No. 20-cv-915, 2021 WL 4458821, at *11 n.4 (N.D.N.Y. Sept. 29, 2021)).

Moreover, although the ALJ recognized that plaintiff had absences for her teacher's aide job and experienced panic attacks that plaintiff associated with interactions with others, the ALJ concluded that plaintiff could *not* perform this job, and instead adopted jobs that had greater limitations, especially to socialization. *See* T at 1193, 1196-97. The ALJ, having considered all evidence that appears to be relevant to off-task time and absenteeism and having adequately explained her rejection of significant off-task time and absenteeism limitations, the Court finds no error in the ALJ's determination that the plaintiff failed to present evidence to justify the adoption of such limitations. *See Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (upholding Commissioner's decision to reject medical opinion concluding that the plaintiff would have time off task as speculative as it was unsupported by medical record).

Plaintiff cites *Kuhaneck v. Comm'r*, 357 F. Supp. 3d 241, 247 (W.D.N.Y. 2019) to argue that, although an ALJ need not adopt an entire medical opinion, due consideration must be given to the whole opinion; however, the ALJ did consider the whole opinion. *See* Dkt. No. 11 at 11. Rather than the RFC being contradictory, as plaintiff suggests, the ALJ adopted mental restrictions in the RFC reflective of greater limitations to plaintiff's social interactions and adaptation than, for example, those

31

opined by NP McNally or the consultative examining and the nonexamining and consultative providers, concluding that the record supported greater limitations.  *See* T at 1192.  As noted, although NP McNally, Cheri Wakeman, Dr. Wang/PA Colin (who did not treat plaintiff for mental health reasons), and NP Sariego's opinions may be consistent with each other in that they opined on off-task behavior and absenteeism limitations, the ALJ reviewed their consistency with the rest of the record and explained, through her consideration of the proper regulatory factors, why she did not find these findings persuasive – mainly due to a lack of observations and testing, which conflicted with medical opinions that did include such observation and testing.  Her finding was reasonable and supported by substantial evidence. *See Timothy Todd S. v. Comm'r of Soc. Sec.*, No. 5:25-CV-00251 (AJB/PJE), 2026 WL 738869, at *9 (N.D.N.Y. Feb. 26, 2026) (rejecting the plaintiff's argument that the ALJ improperly rejected time off task and absenteeism limitations where the ALJ concluded that there was no indication that the doctor performed any testing of the plaintiff's attention and concentration in reaching his determination about time off task and absenteeism) (citing *Lenita B. v. Comm'r of Soc. Sec.*, No. 1:18-CV-6656-EAW, 2021 WL 4197817, at *6 (W.D.N.Y. Sept. 15, 2021) ("finding ALJ appropriately discounted opinion suggesting off-task behavior as 'speculative' as ALJ 'appropriately explained the basis for the conclusion – namely, that there were 'no objective findings or diagnostic studies' consistent with the extreme limitations identified' in the opinion.")).

Although the ALJ accorded the greatest degree of persuasiveness to Dr. Shapiro, Dr. Ferrin, and Dr. Fassler, who opined no restrictions, plaintiff ignores that the ALJ found at least some persuasive value in portions of the treating mental health

32

providers' medical opinions,[14] including (1) NP Sariego's (cosigned by Dr. Pratts) finding that plaintiff did not have limitations in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner, and that her mental abilities and aptitude to perform work was unlimited, very good, or satisfactory in twenty out of twenty one areas[15]; (2) Ms. Wakeham and NP Curr's assessment that plaintiff's mental abilities and aptitude to work were unlimited, very good, or satisfactory in thirteen of twenty-one areas; (3) NP McNally's opinion that plaintiff's mental abilities and aptitude to work were unlimited, very good, or satisfactory in sixteen of twenty one areas.  *See* T at 1191-95. The ALJ then accounted for plaintiff's mental health limitations by finding her unable to perform past relevant work and limiting her to simple, non-production-pace work; no interaction with the public or crowds; only occasional interaction with supervisors and coworkers, simple decisions, and occasional work changes. *See id.* at 1181; *see generally Heather Ann. H., Plaintiff v. Comm'r of Soc. Sec.*, No. 3:25-CV-00246 (PJE), 2026 WL 587681, at *8 (N.D.N.Y. Mar. 3, 2026) (finding RFC limiting the plaintiff to simple work and limited social interactions accounted for the plaintiff's reports of feelings of anxiety and difficulty managing emotions and coping); *James L. E. v. Comm'r of Soc. Sec.*, 758 F. Supp. 3d 5 (N.D.N.Y. 2024) affirming 2024 WL 5119081 (N.D.N.Y. July 29, 2024) (affirming Magistrate Judge's finding that RFC "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.") (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)).

---

[14] The ALJ found PA Conlin and Dr. Wang's opinion to be unpersuasive, but, as the ALJ discussed, they treated plaintiff for "a stress fracture of the right calcaneus and a right wrist drop[,]" and did not treat her for any mental health conditions.  T at 1190.  The ALJ explained her reasoning for rejecting their opined time off task and absenteeism opinions.  *See id.*

[15] As noted, the one area that was concluded to be "seriously limited but not precluded" in NP Sariego and Dr. Pratts' assessment was time off task and absenteeism, which the ALJ rejected.  T at 1194-95.

In sum, "[t]he Court's review of the record supports these conclusions by the ALJ regarding Plaintiff's mental limitations and indicates that Plaintiff has not established further limitations regarding off-task time . . . or attendance than those included by the ALJ in the RFC." *Renalda R.*, 2021 WL 4458821, at *11. The Court agrees with the Commissioner as to the ALJ's assessment of the medical opinions' persuasiveness, that the RFC is supported by substantial evidence, and that plaintiff's argument essentially amounts to a disagreement with the ALJ's weighing of the evidence, which does not provide a basis for remand.

## V. Conclusion

**WHEREFORE**, for the reasons detailed herein, it is hereby

**ORDERED**, that plaintiff's Cross-Motion for Judgment on the Pleadings, dkt. no. 11, is **DENIED**; and it is further

**ORDERED**, that the Commissioner's Cross-Motion for Judgment on the Pleadings, dkt. no. 19, is **GRANTED**, and the Commissioner's decision is affirmed; and it is further

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 20, 2026
     Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

34